**WHAPLES v. FAHYS et al.**

(Supreme Court, Appellate Division, First Department. November 20, 1903.)

1. BROKERS—SALE OF REAL ESTATE—LIABILITY OF PRINCIPALS—JOINT LIABILITY.
　　　A real estate broker procured options on a number of lots owned by different persons, and subsequently the owners agreed to pay him a commission for selling the lots, and a formal contract was executed by the purchaser with the landowners severally; the purchase price of the lots being fixed at a gross sum. *Held*, that the liability of the lot owners to the broker for commissions was not joint.

2. SAME—BROKERS—GOOD FAITH.
　　　Where a real estate broker is guilty of any misrepresentation or deception which induces the principal to contract for the sale, he cannot recover commissions, even though the contract becomes binding on the vendor.

Appeal from Trial Term, New York County.

Action by James R. Whaples against Joseph Fahys and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

¶ 2. See Brokers, vol. 8, Cent. Dig. § 48.

Frank N. Hardenbrook, for appellants.
Charles W. McCandless, for respondent.

LAUGHLIN, J. This is an action by a broker to recover commissions for procuring a purchaser for lands owned by the defendants in severalty. It appears that one Morton Bishop, who was secretary of the Hudson County Consumers' Brewing Company, acting for the incorporators of that company, employed the plaintiff, as a real estate broker, to procure options upon a tract of land in Hoboken, N. J., which had been subdivided into thirty city lots. Sixteen of the lots were owned by the appellant Fahys, six by the appellant Sharp, six by the defendant Blythe, and two by the defendant Egbert. The plaintiff interviewed the respective owners and obtained options. It does not appear whether they all joined in one option, or whether separate options were given; but, in making offers for the property, the lot was taken as the basis. The lots seem to have been regarded as about the same value, and finally the owners all agreed to sell at the same valuation per lot. It appears that the purchaser did not desire to acquire any of the lots unless he could acquire them all; that after the options were secured, and on the 25th day of November, 1899, a formal contract in writing for the purchase and sale of the lots was executed by the purchaser, as party of the first part, and Fahys, Blythe, Sharp, and Egbert, as parties of the second, third, fourth, and fifth parts, respectively. By this contract the purchase price of the entire tract was fixed as gross at $22,000. Five thousand dollars of the purchase price was to be paid in cash, to be divided pro rata between the owners according to their respective interests. The balance was to be secured by purchase-money mortgages and bonds to the respective owners upon the lots owned by them, respectively, for their respective pro rata shares of the balance; it being provided that the purchaser was not to become obligated to take title unless all of the owners could give good title, free and clear of incumbrances, to the lots owned by them, respectively. The only evidence in the record with respect to the payment of any commission by the defendants is the testimony of the plaintiff that at a conference on the 28th day of November, 1899—presumably at the time of the execution of the contract—when the plaintiff and all the owners were present, "Mr. Fahys asked me the commission again, and I told him two and a half per cent. * * * No one dissented from that arrangement." The sale was not consummated on account of the refusal of the defendant Egbert to convey. He was a minister, and owned and resided in a house opposite the premises in question. It appears that he repudiated the contract upon the ground that the plaintiff represented that the purchaser intended to erect upon the premises dwellings or other buildings for residential purposes, which would be a benefit to the neighboring property which was used for similar purposes, and he subsequently learned that a brewery was to be erected thereon. The action is brought upon the theory that the defendants are jointly liable to the plaintiff for commissions at the rate of 2½ per cent. upon the entire purchase price. The defendants Egbert and Blythe were nonresidents. They were only served by publication, and mailing to their

respective addresses without the state.   They have not appeared, and no warrant of attachment was issued.   At the close of the evidence both parties moved for a direction of a verdict, and neither requested to go to the jury.   The court directed a verdict against the appellants for the entire amount of the commissions.

We are of opinion that the plaintiff failed to show a joint liability on the part of the appellants, and that the verdict cannot stand.   This was not the intention of the parties.   The owners did not jointly employ the plaintiff to sell the premises.   Neither was interested in a sale of the other's lands.   The purchaser by whom the plaintiff was originally employed is the only one interested in a sale of the lands. The legal effect of the contract testified to by the plaintiff is that each owner became liable for the proportionate share of the commissions, corresponding with his proportionate share of the lands in case a sale of his lands was effected.   Doubtless any owner who prevented a sale without legal justification would be liable to the plaintiff for a proportionate share of the commissions, and for damages caused by the loss of commissions on the other interests; but the interests of the owners were several, and their contracts with the plaintiff were several.   Therefore they are not jointly liable.

There is considerable evidence indicating that the plaintiff misrepresented the purpose for which the lots were to be used.   He, however, controverted this evidence, and was corroborated to some extent by other witnesses.   Upon the new trial which must be awarded this evidence may become important, for, of course, a broker must act in good faith with his principal, and, if he is guilty of any misrepresentations or deception which induces the principal to contract for the sale of his lands, the broker cannot recover commissions, even though the contract becomes binding upon the vendor on account of the purchaser being innocent.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.   All concur.